Anna M. Rieckhoff, Conservatrix of William F. Rieckhoff, Appellee, v. Gus G. Goddee et al. (Defendants). On appeal of Gus G. Goddee, Appellant.

Gen. No. 25,091.

1. CANCELLATION OF INSTRUMENTS, § 35*—*when evidence requires assignment of judgment to be set aside for mental incapacity.* An assignment of a judgment executed on June 14 was set aside, where the assignor was adjudged insane on August 25 following, upon testimony of physicians indicating that he had been mentally afflicted for some 5 years, and where a number of witnesses testified to the assignor's mental incapacity to enter into a contract on June 14, and where the witnesses to the contrary were not disinterested.

2. CANCELLATION OF INSTRUMENTS, § 5*—*when assignment of judgment will be set aside for mental incapacity.* The rule that even where the contracting party was shown to have been suffering from impaired mental faculties, yet if the transaction in question was fair and honest and what the party might reasonably be expected to do under all the circumstances courts will not set aside such a transaction for the reason that the mental lack had not entered into the act, *held* not to apply in favor of the assignee of a

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

judgment, where the circumstances forced the conclusion that the assignee, knowing that the liability for most if not all of his advances was not upon the assignor but upon his mother, and that the assignee was at best willing to recover that and more by taking from the mentally unsound son, whose condition he knew, the assignment of the collectible judgment in question.

3.   CANCELLATION OF INSTRUMENTS, § 38*—*when defendant not reimbursed on setting aside of assignment of judgment for mental incapacity.* Where an assignment of a judgment was set aside in equity on the ground of the mental incapacity of the assignor, the condition that the assignee should be reimbursed for his advances was not imposed, where the evidence tended strongly to show that the advances were made to the assignor's mother and wholly upon the faith of her credit.

Appeal from the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.   Heard in this court at the March term, 1919.   Affirmed.   Opinion filed October 27, 1919.

DAVID G. ROBERTSON, for appellant.

E. C. MAPLEDORAM, for appellee.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

By this appeal the defendant Goddee brings in review proceedings in the Circuit Court in which a bill was filed by the complainant seeking to set aside an assignment made on June 14, 1917, to Goddee of a judgment which had been entered in favor of William Rieckhoff against Augusta Greenberg, the mother of Anna Rieckhoff, wife of William.   The bill also asks that the sheriff, Traeger, be enjoined from collecting the judgment.   The bill alleged that on the date of the assignment William Rieckhoff was insane and mentally incapable of making a valid assignment, which condition was known to Goddee.   Answer was filed denying generally the allegations of the bill and alleging that William Rieckhoff was indebted to the defendant

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Goddee for money loaned, and had made said assignment in full and complete satisfaction of defendant's claim, and that at the time of the assignment Rieckhoff was sane and mentally capable of transacting his business. After hearing evidence the chancellor was of the opinion that complainant had supported the allegations of the bill by sufficient proof, and granted a decree finding that at the date of the assignment, June 14, 1917, William Rieckhoff was insane and mentally incapable of making a valid contract and that said assignment was void. From this decree the defendant has appealed.

The evidence tends to show that William Rieckhoff was an epileptic, suffering convulsions occasionally since some time in 1910. Witnesses who had observed him testified that he seemed to be suffering from nervousness. Conduct is described which would indicate a decreasing ability to attend to business, and progressive mental feebleness. A number of witnesses gave it as their opinion that on the 14th day of June, 1917, the date of the assignment, he was not mentally capable of making a valid contract, and that he had been in this condition continually from early in the year 1916. His wife testified that he had been examined by a number of physicians, including the Mayo Brothers of Minnesota, and she was informed that he was suffering from dementia præcox. On August 23, 1917, in an inquest of lunacy in the County Court of Cook county, Rieckhoff was adjudged insane. The commission, composed of two physicians, examining him reported that he was insane and should be sent to the State Hospital for the Insane; that his disease was of 5 years' duration, caused by epilepsy and dementia præcox, and that he manifested homicidal or suicidal tendencies. Pursuant to the finding and order of the County Court, Rieckhoff was confined in the asylum for the insane at Kankakee. Thereafter Anna M.

Rieckhoff, his wife, was appointed conservatrix by the Probate Court.

Some witnesses, whom we can hardly consider as disinterested, testified on behalf of Goddee that in their opinion Reickhoff was mentally capable at the date of the assignment. The assignment prepared was drawn up by attorneys representing Rieckhoff and was executed in their office, and nothing seems to have occurred at the time of this transaction which would indicate that Rieckhoff did not understand what he was doing, nor any unwillingness or mental incapacity. It is earnestly said in behalf of Goddee that even if Rieckhoff was feeble-minded at this time, yet if the transaction was bona fide and fair, and the alleged mental incapacity was not a factor in the transaction in any way, the courts will apply the rule that there is no reason in good morals why even a lunatic should not pay his debts lawfully contracted.

It has been held in many cases that even where the contracting party was shown to have been suffering from impaired mental faculties, yet if the transaction in question was fair and honest and what the party might reasonably be expected to do under all the circumstances, courts will not set aside such a transaction, for the reason that the mental lack has not entered into the act. *English v. Porter,* 109 Ill. 285; *Kelly v. Nusbaum,* 244 Ill. 158; *Fitzgerald v. Allen,*

We should be inclined to apply this rule to the instant case if the assignment from Rieckhoff to Goddee was proven to be simply a bona fide payment of Rieckhoff's legal indebtedness and one which, all the circumstances considered, would clearly appear to be free from any taint of unfairness because of the mental lack of one of the parties. We are of the opinion that this is not such a case, and that the chancellor, in the interests of fair dealing, was justified in setting the assignment aside and holding it void.

It appears that in August, 1916, Rieckhoff and his wife separated; that he went to the home of his mother and father to live, while she and their two children went to live at the home of Augusta Greenberg, her mother. Out of this situation seems to have grown a conflict between the parties and their relations, in which the mother of Mrs. Rieckhoff sides with her daughter, while William Rieckhoff's mother was his active ally. In March and April, 1917, Mrs. Rieckhoff made many requests of William for the support of herself and their children, and sought to force such payment by presenting a petition to the County Court. Pursuant to this Rieckhoff was ordered to pay to his wife the sum of 8 dollars per week. This does not seem to have been paid, and attachment proceedings were contemplated. The judgment note held by Rieckhoff was made by Augusta Greenberg, his wife's mother, and seems to have constituted the only assets of his estate.

Prior to July, 1916, Rieckhoff had been working for the Chicago, Milwaukee & St. Paul Railway Company. At this time he left, but it was found that he was short in his accounts with the railroad in the sum of $500. Goddee claims that he advanced the money to make good this shortage, and that this advance was part of the consideration for the assignment of the judgment to him. Examination of the testimony, however, fails to convince as to this claim. At and before the time of the alleged shortage Goddee had never known or seen William Rieckhoff, but had had considerable dealings with his mother, Karolina Rieckhoff. He seems to have done work for her and made certain advances. Goddee testifies that upon the request of the mother he gave her some $375, also $7 and an item of $75, to be used to settle William's shortage with the railroad; but there is also evidence tending to show that the mother induced her son and his wife to sell a certain lot to her, from the purchase price of which she de-

ducted a sufficient amount to settle with the railroad. Whether or not the railroad ever did receive any money on William's account does not appear. This transaction seems to have been between Goddee and Karolina Rieckhoff, for which she alone would be liable.

Goddee also testifies that he gave the mother the sum of $200, which she told him was to pay certain judgments against William. The only evidence as to such judgments is this statement of Goddee. The only money paid directly to William Rieckhoff is an item of $10 and another of $20, which apparently was advanced after June 14, 1917, the date of the assignment in question.

There is also evidence tending to show that Goddee, prior to the time of the assignment, knew of William's lack of mental capacity; he was told that "there is something wrong with Will. * * * He does not seem to possess the capacity to act for himself."

The judgment which was assigned was for $1,123, and as Mrs. Greenberg, against whom it ran, owned sufficient real estate, it was a fair presumption that the full amount of the judgment with interest could be collected.

These circumstances, and other details too long to recite, force the conclusion that Goddee, knowing that the liability for most, if not all, of his advances was upon Karolina Rieckhoff, and not upon her son William, was at least willing to recover these, and more, by taking from the mentally unsound son, whose condition he knew, the assignment of a collectible judgment for over a thousand dollars.

We cannot escape the conclusion, from a consideration of all the circumstances, that the impaired mental capacity of William Rieckhoff was a factor in the assignment of June 14, 1917; that in itself it has not the character of a transaction in good morals, and that a court of equity in justice should declare it void.

Rieckhoff v. Goddee, 215 Ill. App. 141.

Defendant argues that if the assignment should be held void, the court should also decree as a condition thereto that he be reimbursed for his advances. If, as the evidence strongly tends to show, the advances were made to Karolina Rieckhoff and wholly upon the faith of her credit, the estate of William cannot be decreed to pay her obligation. In the cases cited where a return has been ordered, money or other thing of value has actually been delivered. That is not this case. By the wiping out of the assignment, Goddee is in no worse position than he was before it was made, and he may proceed legally to collect what may be due him.

In affirming the decree we do not mean to imply that we agree with all the findings or conclusions of the chancellor contained in the decree which was entered. We hold that for the reasons above indicated the assignment should be held void, and the decree is affirmed.

*Affirmed.*